UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODGERICK BOOTH, #188768

                Plaintiff,                      Case No. 05-71675

vs.

                                    Honorable George Caram Steeh
                                    Magistrate Judge Steven D. Pepe

CORRIGAN,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

On April 28, 2005, Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a complaint against Defendant Katherine Corrigan in her individual capacity, pursuant to 42 U.S.C. § 1983.  Plaintiff has filed a motion for summary judgment (Dkt. # 11) and Defendant has filed a motion for summary judgment and dismissal (Dkt. # 13).  All pretrial proceedings have been referred pursuant to 28 U.S.C. 636 (b)(1)(B).  For the reasons stated below, IT IS RECOMMENDED that Defendant's motion be GRANTED and Plaintiff's motion be DENIED.

## I.   BACKGROUND

Plaintiff's complaint alleges that he was transferred from the St. Louis Correctional Facility (SLCF) to the Thumb Area Correctional Facility (TCF) on June 11, 2004.  Upon Plaintiff's arrival Defendant improperly placed him in temporary segregation.  On June 16, 2004, in retaliation for Plaintiff's filing a grievance regarding the temporary segregation, Defendant reclassified him under the more restrictive classification of administrative segregation without providing Plaintiff with notice or an opportunity to be heard regarding the reclassification.

Plaintiff alleges that Defendant's actions constituted a violation of Michigan Department of Corrections (MDOC) policy, and a violation of his constitutional right to due process, liberty and equal protection.

Plaintiff alleges that when he attempted to elicit an explanation from Defendant she responded by saying, "We made a mistake by placing you on temporary segregation, and instead of waiting for me to correct the situation, you wrote a grievance. You have only been here for a few days and you are already making a name for yourself. I'm going to keep you on administrative segregation for a week and if you don't catch any tickets I'll think about releasing you." (Dkt. #1, p. 4).

Plaintiff alleges that on June 25, 2004, Defendant responded to the grievance regarding temporary segregation he had submitted by admitting that she "wrongfully confined" him to temporary segregation.[1]  In her motion Defendant admits that Plaintiff should not have been classified under temporary segregation when he arrived at TCF, because Plaintiff was classified under administrative segregation at SLCF and should have remained so upon arriving at TCF (Dkt. # 13, p. 4).   This, Defendant alleges, is why Plaintiff was reclassified from temporary to administrative segregation without notice or hearing  –  notice and/or hearing were not necessary when the change to administrative segregation designation did not represent a downward departure

---

[1]This grievance is not attached to any of the pleadings or motions in this matter, but was attached to Plaintiff's complaint in Western District Case No. 04-0546, which was transferred to the Eastern District, Case No. 04-73419, and then dismissed for failure to exhaust (Exhibit 1).  In the grievance response Defendant states that Plaintiff "was transferred to TCF on 6-11-04 on Administrative Segregation status from SLF pending SCC review. The T-seg designation was in error, and should have been Administrative Segregation status. The t-seg status was less than four business days, as the error was corrected on 6-16-04, with prisoner being correctly designated administrative seg status."

from Defendant's then current security classification (*id.*, p. 5).[2]

In his response to Defendant's motion, Plaintiff admits that he was classified under administrative segregation upon arriving at TCF and explains that he received that classification "by J.M.F for fighting pending transfer to another facility.  Plaintiff was transferred to [SLCF] and was held in segregation because he was not allowed to be on grounds with a male staff member in 2002, when Plaintiff was a Resident of that facility" (Dkt. # 18, p. 2).

## II.    LEGAL STANDARD

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the

---

[2] Defendant further alleges that she is not able to classify prisoners unilaterally. Prisoners must be reviewed by the Security Classification Committee (SCS), which is comprised of two staff members, prior to consideration for reclassification.

pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment and disposed of as provided in Rule 56.

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party

demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted

this to mean that summary judgment should be entered if the evidence is such that a reasonable jury

could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party has "the burden of showing the absence of a genuine issue as to any material fact."

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also, Lenz v. Erdmann Corp.*, 773 F.2d

62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in

the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th

Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  Once the

moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere

allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits

or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party's failure to "make a sufficient showing

to establish the existence of an element essential to that party's case, and on which the party will bear

the burden of proof at trial" will result in dismissal of the non-moving party's claim.  *Celotex Corp.

v. Catrett*, 477 U.S. 317, 322 (1986).

## III.  ANALYSIS

### A.  Equal Protection

An equal protection claim must assert that the plaintiff suffered class-based discrimination.

*See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d

332, 341 (6th Cir. 1990) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" (citation and internal quotation marks omitted)).

Accepting all well-plead factual allegations of the complaint as true and construing the complaint in the light most favorable to Plaintiff, he has not claimed that he is a *member of a constitutionally protected class* and that Defendant intentionally discriminated against him *because* of his membership in that protected class as is required to support an Equal Protection claim. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir.2000); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990).

The Complaint does not allege sufficient facts to support an Equal Protection claim - Plaintiff merely states that Defendant's actions violated his "Right To Equal Protection" but fails to allege any of the elements of a *prima facie* Equal Protection claim.  Plaintiff explains for the first time in his motion for summary judgement that his Equal Protection claim is based upon the allegation that similarly situated prisoners were treated differently than he.  Yet, prisoners are not members of a protected class for Equal Protection purposes. *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  Nor does Plaintiff indicate that the similarly situated inmates share similar characteristics except for the protected class difference of race, gender, national origin, etc.  Therefore, Plaintiff has not asserted a prima facie case for an Equal Protection violation and his Equal Protection claim should be dismissed for failure to state a claim.

## B.   Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from

5

continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d at 394. The plaintiff has the burden of proof on all three elements. Thus, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

It is undisputed that Plaintiff engaged in protected conduct when he filed the grievance against Defendant. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996)(inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf).

Defendant argues that no adverse action exists in this matter because Plaintiff was not *re*classified to administrative segregation in response to his filing a grievance or in response to anything that Plaintiff did. His classification for administrative segregation was determined at SLCF prior to his arrival at TCF and should have remained so at TCF. The TCF staff, therefore, did not reclassify Plaintiff and only corrected his classification from temporary segregation after he was mistakenly classified under temporary segregation upon his arrival at TCF.

Pursuant to the MDOC Policy Directive:

(1) A prisoner's security classification is a determination, based on the experience of correctional administrators, as to the level of confinement required for public safety and the safety and security of the facility. It is not a punitive or disciplinary sanction. All of the following factors may be considered in determining classification:
(a) The prisoner's need for protection.
(b) The safety of others.
(c) The protection of the general public.
(d) Prevention of escape.
(e) Maintenance of control and order.
(f) Medical and mental health care needs of the prisoner.

(2) After examination of all relevant information, a prisoner shall be assigned to 1 of

6

the following. that is the least restrictive level of custody consistent with the requirements of subrule (1) of this rule:
(a) Segregation.
(b) Level VI.
(c) Level V.
(d) Level IV.
(e) Level III.
(f) Level II.
(g) Level I.
(h) Community status.

(3) Security classifications to all levels, except level VI and community status, shall be determined at each institution by a committee which is appointed by the warden and which is under the direction of the deputy director for correctional facilities. The deputy director of correctional facilities administration shall determine all placements at level VI. Placement on community status requires the concurrence of the administrator of the office of field programs and is subject to R 791.4410 and R 791.4425.

(4) A prisoner who objects to a reclassification decision may file a grievance.

MI ADC R. 791.4401.

The MDOC Policy Directive concerning segregation defines administrative segregation as the "most restrictive level of security classification", and goes on to explain that prisoners may only be signed to administrative segregation for the following reasons:

1.      The prisoner demonstrates an inability to be managed with general population privileges;
2.      The prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility;
3.      The prisoner is a serious escape risk;
4.      The prisoner is under investigation by an outside authority for suspected felonious behavior.
5.      The prisoner tests positive for HIV and is subsequently found guilty of a major misconduct for behavior which could transmit HIV infection ....

MDOC Policy Directive 04.05.120(J) (attached to Plaintiff's motion, *see* Dkt. # 11, Exh. A).

There is no genuine issue of material fact at issue in this matter regarding Plaintiff's retaliation claim.  Plaintiff does not dispute that he was classified under administrative segregation

at the time he was transferred to TCF (Dkt. #18, p. 3), and offers no explanation as to why he believes his security classification would automatically be modified upon transfer from one facility to another within the MDOC system.  Defendant, the Assistant Deputy Warden of TCF, has attached an affidavit in which she attests that Plaintiff was designated under administrative status at TCF because he was transferred to TCF from SLCF under administrative segregation status, mistakenly given temporary segregation status and then corrected back to administrative segregation status (Dkt. # 13, Exh. B).  She further attests that only the Security Classification System, comprised of two staff members, could have properly changed Plaintiff's classification.  Defendant did not have the legal capacity alone to change Plaintiff's classification.

And, as stated above, once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. at 322.

There is not sufficient evidence to allow a fact-finder to conclude that Defendant had the capacity to change Plaintiff's security classification, nor did so.   Thus, Plaintiff cannot prove his grievance caused Defendant to retaliate by changing his security classification.

Plaintiff's retaliation claims should be dismissed, as it is undisputed that he was classified under administrative segregation prior to his transfer to TCF and Defendant only maintained that classification and did not, therefore, take any adverse action sufficient to support a retaliation claim.

8

### 3.    Due Process/Liberty

For the reasons stated above, Plaintiff's Liberty and Due Process rights were not implicated by Defendant's role in *maintaining* his administrative segregation status.

In fact, even without considering the undisputed fact that Plaintiff was not entitled to new notice and/or hearing simply by virtue of his transfer to a new facility, his Due Process and Liberty arguments are without merit for three reasons.

First, placement in administrative segregation does not automatically give rise to a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Bennett v. Smith*, 110 Fed. Appx. 633, 634 -635 (6th Cir. 2004). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty, *see, e.g., Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., *Wolff v. McDonnell*, 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Wilkinson v. Austin*, 125 S.Ct. 2384, 2393 (2005).

Plaintiff relies solely upon the mandatory language of MDOC regulations concerning

placement into administrative segregation to support his claim of a liberty interest.[3]

> However, the Supreme Court in *Sandin* ... instructed that a state regulatory scheme does not create a liberty interest merely because the regulations incorporate 'language of an unmistakably mandatory character.'   Apart from any mandatory language in a regulation, the plaintiff must also prove that he suffered restraint which imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'

*Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791 (1995)(6th Cir. 1995)(citations omitted).[4]   Here,

Plaintiff has not alleged that he suffered any restraint which imposed an atypical or significant

hardship in relation to his ordinary sentence.  The Sixth Circuit has repeatedly held that placement

into administrative segregation is not a qualifying hardship.  *Mackey*, 111 F.3d 460; *Rimmer-Bey*,

62 F.3d 789.   Therefore, Plaintiff's Liberty claim should be dismissed as his placement into

administrative segregation did not implicate a protected liberty interest.

Furthermore, even if plaintiff had possessed a state-created liberty interest, the challenge to

any procedural protections required by the Due Process Clause were available when Plaintiff was

---

[3]To the extent Plaintiff intended to plead that the Due Process Clause inherently gives rise to a protected liberty interest in his freedom from administrative segregation, that argument would have failed as well as "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin, 515 U.S. at 478; see also, Meachum v. Fano*, 427 U.S. 215 (1976)(no liberty interest where prisoner transferred to a maximum security facility); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(no liberty interest in credit for good behavior); *but see, Vitek v. Jones*, 445 U.S. 480, 493-494 (1980)( Due Process Clause provides liberty interest in avoiding involuntarily transfer to a state mental hospital as sentence was then "qualitatively different" and had "stigmatizing consequences." ); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990)(liberty interest in being protected from the involuntary administration of psychotropic drugs).

[4]With regard to Plaintiff's claim that his classification under temporary segregation was unconstitutional (Complaint, ¶ 12), it should be noted that MDOC Policy Directive 04.05.120(G) states that prisoners may be designated under temporary segregation in connection with a transfer and notice need not be given to the prisoner.  There is also no hearing required for classification in temporary segregation as long as the confinement does not exceed 7 business days.  Plaintiff was classified under temporary segregation for 5 days, June 11-16, 2004.

originally classified at SLCF.  The procedure to classify a prisoner into administrative segregation under Michigan prison regulations requires notice of the intended reclassification and, in most cases, a hearing, unless he was reclassified after a misconduct ticket was upheld  –  after different notice and opportunities to be  heard.[5]  MDOC Policy Directive 04.05.120(I)-(Q).  Plaintiff has not alleged that he was denied these safeguards when he was initially classified under administrative segregation and, therefore, it appears that Plaintiff was afforded all the due process required under MDOC's policy and the Fourteenth Amendment .

Last, to rule in Plaintiff's favor would "run counter to the view expressed in several [United States Supreme Court] cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.  *Wolff*, 418 U.S., at 561-563, 94 S.Ct., at 2977-2978; *Hewitt*, 459 U.S., at 470-471, 103 S.Ct., at 870-871; *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537-2538, 53 L.Ed.2d 629 (1977)."  *Sandin*, 515 U.S. at  483.

As the *Sandin* Court pointed out, "such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims since *Hewitt*.  *See, e.g., Klos v. Haskell*, 48 F.3d 81, 82 (CA2 1995) (claiming liberty interest in right to participate in "shock program"--a type of boot camp for inmates).

---

[5]Plaintiff's response indicates his administrative segregation classification was based on "fighting" and because he was "not allowed to be on grounds with a male staff member" (Dkt. # , p. 3).  A reclassification hearing is not required if a prisoner has already been found guilty of a major misconduct violation as the result of a hearing on that charge.  MDOC Policy Directive 04.05.120(M).  Consequently, affording Plaintiff notice and a hearing on an intended "reclassification" would have been unnecessary if these violations were a  major misconduct as seems likely for "fighting."

After being classified by whatever method, an inmate can also file a grievance over the classification which accords Plaintiff additional, albeit modest, procedural safeguards.

Here, a prisoner classified under MDOC's most restrictive security classification was transferred to another MDOC facility.  Applying proper deference and flexibility to MDOC's actions it is clear that an accepting facility should be allowed to maintain such a classification pending their own Security Classification Committee's review of the situation and before releasing the prisoner into general population - this can only be considered an ordinary incident of prison life.

### 4.    Qualified Immunity

> In civil suits for money damages, government officials acting in their official capacity are entitled to qualified immunity for discretionary acts which do not violate clearly established law of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ...  The Supreme Court has recently clarified that, in order to assess whether the defendants-officials in this case should be cloaked with immunity from suit, we must engage in a two-part, sequential analysis: first, we must determine whether the plaintiff has alleged facts which, when taken in the light most favorable to [him], show that the defendant-official's conduct violated a constitutionally protected right; if we answer the first question in the affirmative, we must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

*Comstock v. McCrary*, 273 F.3d 693, 701-702 (2001)(6th Cir, 2001).

In the present case, the inquiry is sufficiently answered at the first step.  As discussed above, Plaintiff had no constitutional right to remain free from administrative segregation at any time during his confinement.  Plaintiff also had no clearly established statutory right to renewed notice or hearing regarding his security classification upon his transfer to TCF.  Therefore, Defendant did not violate any constitutional right of Plaintiff, which moots the clearly established law issue. Defendant does not need qualified immunity for her discretionary acts because they were not unconstitutional.

### III. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion be GRANTED and Plaintiff's Motion be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 24, 2006                                          s/Steven D. Pepe
Ann Arbor, Michigan                                               United States Magistrate Judge



Certificate of Service

I hereby certify that a copy of this Report and Recommendation was served upon the Plaintiff and attorney(s) of record by electronic means or U. S. Mail on February 24, 2006.

s/William J. Barkholz

Courtroom Deputy Clerk

14